UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JULIAN SALAS,<br><br>             Plaintiff,<br><br>v.<br><br>DIANE L. ST. PIERRE and DOES I-X,<br><br>             Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [27] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00211-DBB<br><br>District Judge David Barlow |

Before the court is Defendant Diane St. Pierre's [27] Motion for Summary Judgment.[1]

**BACKGROUND**

This case arises from a car accident that occurred on March 3, 2020.[2] Though the parties dispute the exact circumstances surrounding the accident,[3] Plaintiff Julian Salas claims that Ms. St. Pierre made an improper right turn and struck another driver, who then veered into the vehicle in which Mr. Salas was riding as a passenger.[4] The other driver is not a party to this suit.

**STATEMENT OF FACTS**

The case was removed to this court in March 2024.[5] In February 2025, the court entered a second amended scheduling establishing case deadlines.[6] Per that order, Plaintiff's expert reports

---

[1] Defendant's Motion for Summary Judgment ("MSJ"), ECF No. 27, filed Nov. 10, 2025.
[2] *See* Complaint ("Compl.") ¶ 6, ECF No. 2-1, filed Mar. 20, 2024.
[3] *See* Response to Motion for Summary Judgment ("Opp'n") 2, ECF No. 34, filed Dec. 8, 2025.
[4] Compl. ¶¶ 8–9.
[5] Notice of Removal, ECF No. 2, filed Mar. 20, 2024.
[6] Second Amended Scheduling Order, ECF No. 26, entered Feb. 20, 2025.

and disclosures were due by June 6, 2025, and Defendant's expert disclosures were due by July 20, 2025.[7] The last day for expert discovery was set for November 2, 2025.[8]

Although Mr. Salas disclosed several treating physicians as potential witnesses in his initial disclosures,[9] he did not make any expert witness disclosures by the deadline.[10] On November 10, 2025, after the close of expert discovery, Ms. St. Pierre filed a motion for summary judgment on the grounds that Mr. Salas never disclosed any expert witnesses and that he cannot show causation or establish medical expenses without experts.[11] On November 18, 2025, Mr. Salas provided Ms. St. Pierre with a Notice of Non-Retained Expert Witnesses and filed a document with the court certifying that he had done so.[12] After reviewing the parties' initial briefs on the motion for summary judgment, the court ordered additional supplemental briefing related to Plaintiff's medical history.[13]

Mr. Salas alleges that he "suffered injuries and pain to his lower back, mid-back, neck and shoulders, and ribs" as a result of the car accident.[14] He alleges that his lower back injuries are permanent and that he still experiences pain from them.[15] He also testified that he still experiences neck pain that he attributes to the accident.[16] Mr. Salas disclosed that, prior to the car

---

[7] *Id.* at 2–3.

[8] *Id.* at 3.

[9] Plaintiff's Initial Disclosures 2–3, ECF No. 27-1, filed Nov. 10, 2025.

[10] *See* Docket.

[11] *See generally* MSJ.

[12] *See* Certificate of Service of Plaintiff's Non-Retained Expert Witnesses ('Certificate of Expert Disclosure"), ECF No. 28, filed Nov. 18, 2025; *see also* Plaintiff's Notice of Non-Retained Expert Witnesses (Plaintiff's Expert Disclosures"), ECF No. 35-3, filed Dec. 15, 2025.

[13] *See* Docket Text Order Requesting Supplemental Briefing, ECF No. 36, entered Feb. 2, 2026.

[14] Plaintiff's Responses to First Set of Discovery Requests ("Plaintiff's Discovery Response") 6, ECF No. 27-2, filed Nov. 10, 2025; *see also* Salas Deposition 24:7–28:18, ECF No. 35–6, filed Dec. 15, 2025.

[15] Plaintiff's Discovery Response 7–8.

[16] Salas Deposition 26:17–25.

accident, he was treated for lower back pain on at least one occasion in 2019.[17] He testified that he had no shoulder or neck pain before the car accident.[18] After the car accident, Mr. Salas was treated for a shoulder injury following a work accident in 2022, and he was treated for a chest injury following another work accident in 2024.[19]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[21] The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[22] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[23]

## DISCUSSION

I.      **Expert Witness Disclosure**

The primary basis for Defendant's Motion for Summary Judgment is that Plaintiff failed to designate any expert witnesses and thus cannot present any expert causation testimony at trial.[24] Under Rule 26(a)(2) of the Federal Rules of Civil Procedure, a party must disclose any

---

[17] Plaintiff's Discovery Response 5.
[18] Salas Deposition 25:13–15, 28:9–11.
[19] *Id.*; *see also* Salas Deposition 9:15–10:1, 10:21–11:12.
[20] Fed. R. Civ. P. 56(a).
[21] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).
[22] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[23] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).
[24] MSJ 7–8.

expert witnesses that it may use at trial.[25] For expert witnesses who are not "retained or specially employed to provide expert testimony in the case," a full expert report is not necessary.[26] However, a party who wishes to use an unretained expert must still disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."[27] If a party fails to properly disclose a witness under Rule 26(a), the party is not permitted to use that witness or their testimony unless the failure to disclose "was substantially justified or is harmless."[28]

### A. Rule 26 Disclosure

Mr. Salas argues that he should be permitted to use his treating physicians as non-retained expert witnesses.[29] In his Rule 26 initial disclosures, Mr. Salas identifies five treating physicians as "individual[s] likely to have discoverable information that the plaintiff may use to support his claims."[30] For each of those treating physicians, the initial disclosure describes the type of information he or she may have, often including categories like the diagnosis, cause, and treatment of Plaintiff's injuries.[31] However, the initial disclosure does not include any summary of the facts and opinions to which the treating physicians are expected to testify.[32] Therefore, Plaintiff's initial disclosures do not satisfy the Rule 26(a)(2)(C) standard for disclosing non-retained expert witnesses.

---

[25] Fed. R. Civ. P. 26(a)(2)(A).
[26] Fed. R. Civ. P. 26(a)(2).
[27] Fed. R. Civ. P. 26(a)(2)(C).
[28] Fed. R. Civ. P. 37(c)(1).
[29] Opp'n 10.
[30] Plaintiff's Initial Disclosures 1–3.
[31] *Id.* at 2–3.
[32] *Id.*

Mr. Salas did not make his non-retained expert disclosures until November 18, 2025, well after the deadlines for expert disclosure and expert discovery had passed.[33] But even this belated expert disclosure does not satisfy the Rule 26(a)(2)(C) requirements. Expert disclosure requirements are intended to "to eliminate surprise and provide opposing counsel with enough information to prepare efficiently for deposition, any pretrial motions and trial."[34] To this end, Rule 26(a)(2)(C) requires disclosure of more than just topics or categories of testimony.[35] Instead, parties must summarize the facts and opinions to which their expert witness will testify,[36] including the basic substance of an expert's opinion.[37] This means that a disclosure of a treating physician who will offer a causation opinion must "explain 'how' and 'why' the physician reached a particular opinion."[38]

Plaintiff's expert disclosures do not meet this standard. For each treating physician, the disclosure only states what that expert's testimony is anticipated to be about.[39] It does not even summarize the physicians' opinions, much less explain how and why the witnesses formed their opinions.[40] Mr. Salas argues that, because he produced the medical records created by the treating physicians as part of his initial disclosures, Ms. St. Pierre has effectively had access to

---

[33] Plaintiff's Expert Disclosures.

[34] *Nosewicz v. Janosko*, No. 16-CV-00447-PAB-KLM, 2019 WL 4248895, at *3 (D. Colo. Aug. 19, 2019), *report and recommendation adopted*, No. 16-CV-00447-PAB-KLM, 2019 WL 4242739 (D. Colo. Sept. 6, 2019) (quoting *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-CV-02848-REB-MEH, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014)).

[35] Fed. R. Civ. P. 26(a)(2)(C).

[36] *Id.*

[37] *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

[38] *Prisbrey v. Progressive Classic Ins. Co.*, No. 4:18-CV-00088-DN, 2021 WL 1531413, at *3 (D. Utah Jan. 8, 2021) (quoting *Nosewicz*, 2019 WL 4248895, at *5). Mr. Salas also argues that the Utah Supreme Court's decision in *Drew v. Lee*, 250 P.3d 48 (Utah 2011), supports his position. Plaintiff's Supplemental Brief 8–9, ECF No. 37, filed Mar. 10, 2026. He is mistaken. *Drew* addressed whether Utah Rule of Civil Procedure 26(a)(3)(B) required a written expert report from a treating physician, not the substance of Federal Rule of Civil Procedure 26(a)(2)(C)'s disclosure requirement.

[39] *See* Plaintiff's Expert Disclosures.

[40] *Id.*

the experts' "facts and opinions as contained in their records."[41] But a party cannot "cannot

satisfy its obligations under Rule 26(a)(2)(C) by merely pointing to large swaths of

information"[42] because "designation of a prodigious volume of material does not constitute a

summary of the facts" and opinions required under the rule.[43] Therefore, "referring to medical

records does not cure insufficient Rule 26 expert disclosures."[44]

### B.    Substantially Justified or Harmless

Because Plaintiff's expert disclosure is both untimely and inadequate, he can only use his

treating physicians as experts if his Rule 26 failures were substantially justified or harmless.[45]

"[T]he party responsible for a Rule 26(a) violation bears the burden of showing the failure was

substantially justified or harmless."[46] In an affidavit, Plaintiff's counsel explains that he failed to

provide a separate expert disclosure before the deadline because he believed his initial

disclosures were sufficient to satisfy Rule 26(a)(2).[47] But "a misunderstanding of the law does

not equate to a substantial justification for failing to comply with the disclosure deadline."[48]

---

[41] Opp'n 6.

[42] *ClearOne, Inc. v. PathPartner Tech., Inc.*, No. 2:18-CV-00427-JNP-JCB, 2022 WL 1063733, at *13 (D. Utah Apr. 8, 2022) (quoting *Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 WL 1759638 at *3, 2021 U.S. Dist. LEXIS 87338 at *3 (D. Colo. Feb. 18, 2021)).

[43] *Nosewicz*, 2019 WL 4248895, at *6 (quoting *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1674954, at *1 (D. Colo. May 3, 2011)) (cleaned up).

[44] *Lopez v. Singh*, No. CV 22-36 JCH/SCY, 2023 WL 7130422, at *5 (D.N.M. Oct. 30, 2023). And even if simply referring to a medical record could meet the standard, what Plaintiff relies on here—a treatment note from Dr. Grose opining that "In as much as [Mr. Salas] did NOT have back pain prior to this accident, there is a temporal relationship between symptoms and accident"— is contradicted by earlier medical records showing that Mr. Salas had previously sought treatment for back pain. *Compare* Plaintiff's Supplemental Brief 3 *with* Salas Medical Records 82, ECF No. 38–1, filed Mar. 10, 2026.

[45] Fed. R. Civ. P. 37(c)(1).

[46] *Roof Rehab, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-01863-RMR-NYW, 2021 WL 5579053, at *2 (D. Colo. Nov. 30, 2021).

[47] Affidavit of Brandon L. Gatewood ("Gatewood Affidavit") ¶¶ 9–11, ECF No. 34-3, filed Dec. 8, 2025.

[48] *Blodgett v. United States*, No. 2:06-CV-00565-DAK, 2008 WL 1944011, at *6 (D. Utah May 1, 2008) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir.2004)) (cleaned up).

Plaintiff's Rule 26 violations were not justified, so they must be harmless in order for Mr. Salas to use his treating physicians as experts.

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."[49] Nevertheless, courts should consider the following four factors when analyzing harmlessness and justification:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.[50]

### 1.    Prejudice or Surprise

In this case, the prejudice to Ms. St. Pierre is obvious. Not only did Mr. Salas not timely disclose his treating physicians as expert witnesses, but he still has not disclosed any of their opinions or the factual basis for whatever causation opinions they may have.[51] If the treating physicians were allowed to testify to causation, Ms. St. Pierre would hear their expert opinions for the first time at trial. She has not had the opportunity to depose the physicians in their expert capacities or have her experts analyze their causation opinions.

Mr. Salas contends that the failure was harmless because Ms. St. Pierre had sufficient notice that he intended to use his treating providers as witnesses, because she was able to conduct all necessary discovery, and because he produced medical records that disclosed causation opinions.[52] None of these arguments are persuasive.

---

[49] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999).

[50] *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc*., 170 F.3d at 993).

[51] *See* Plaintiff's Expert Disclosures (failing to summarize any expert opinions or the facts and bases for any causation opinion).

[52] Opp'n 6–7.

First, the fact that experts are often used in certain situations is not enough to provide notice to an opposing party that a disclosed witness may be used as an expert.[53] The purpose of Rule 26(a) is not just to identify expert witnesses, but also to disclose the substance of their opinions.[54] The treating physicians were identified as witnesses that Mr. Salas may use to support his claims.[55] This is enough to allow them to testify as lay witnesses, but it does not provide any notice that they could be used as experts.

Second, there is no evidence that Ms. St. Pierre was able to conduct adequate expert discovery. Mr. Salas reports only that he, Ms. St. Pierre, and the other drivers were deposed.[56] Even if the parties had deposed the treating physicians as lay witnesses, Defendant could not have effectively cross-examined the physicians or arranged for rebuttal expert testimony without knowing what their expert opinions are.[57] And though Ms. St. Pierre retained an expert witness of her own,[58] her expert has not had the opportunity to examine and rebut the treating physicians' undisclosed opinions.

Third, as discussed above, references to voluminous medical records cannot cure a deficient Rule 26(a) expert disclosure.[59] A party cannot escape its Rule 26(a)(2)(C) obligations by simply disclosing large amounts of information and forcing the opposing party to attempt to discern what the witness's expert opinion may be. Furthermore, Mr. Salas has only provided the

---

[53] *See Jacobsen*, 287 F.3d at 953.
[54] *Id.*
[55] Plaintiff's Initial Disclosures 1.
[56] Opp'n 4.
[57] *See Jacobsen*, 287 F.3d at 953 ("[Expert] reports are intended not only to identify the expert witness, but also to set forth the substance of the direct examination. Such disclosure is necessary to allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.").
[58] *See* Newton Report.
[59] *Lopez v. Singh*, No. CV 22-36 JCH/SCY, 2023 WL 7130422, at *5 (D.N.M. Oct. 30, 2023).

court with a single example from the medical records in this case where a treating physician even made a causation opinion.[60] Allowing Plaintiff's treating physicians to present their still-undisclosed causation opinions at trial would both surprise and prejudice Ms. St. Pierre.

### 2. Ability of the Party to Cure the Prejudice

Mr. Salas does not present the court with any arguments about how he could cure the prejudice created by his untimely and insufficient expert disclosures. Instead, he takes the position that any prejudice was already cured by his belated disclosure.[61] As noted earlier, it clearly was not. At a minimum, curing the prejudice to Ms. St. Pierre would first require Mr. Salas to fully disclose his treating physicians' expert opinions as well as how and why they reached those opinions. Then, expert discovery would need to be reopened so that Ms. St. Pierre could depose each treating physician in his or her expert capacity. She would also need the opportunity to designate a separate rebuttal expert or have her current expert examine and rebut the opinions. Finally, because the dispositive motion deadline has already passed in this case,[62] the court would need to set a new deadline for dispositive motions in light of the expert testimony. Ms. St. Pierre also would need an opportunity to move to exclude Mr. Salas' experts under Rule 702. This would address the prejudice of Defendant not knowing or being able to prepare for Plaintiff's causation testimony prior to trial, but it would also unavoidably result in several months or more of delay. Defendant notes that this additional delay would also result in her incurring additional fees and costs.[63]

---

[60] *See* Opp'n 8–9; Utah Spine and Pain Record 3, ECF No. 34-6, filed Dec. 8, 2025.
[61] Opp'n 10.
[62] Second Amended Scheduling Order 3.
[63] MSJ 9.

### 3. Disruption of Trial

The court cannot fully determine whether the treating physicians' expert opinions would be disruptive if introduced at trial because Plaintiff has not yet revealed what those opinions are. As to whether allowing continued discovery to cure the inadequate disclosures would disrupt the trial, no trial date is set. Though there would be several months or more of delay, additional expert discovery would not disrupt a scheduled trial date.[64]

### 4. Bad Faith or Willfulness

Plaintiff's counsel has represented that the disclosure failures were due to a simple misunderstanding of Rule 26's discovery requirements.[65] There is no evidence before the court to contradict this claim or to indicate that Plaintiff acted in bad faith or intentionally disobeyed the court's scheduling order.

Having analyzed all the relevant factors, the court determines that Mr. Salas may not introduce any expert testimony at trial. His expert disclosures were due on June 6, 2025, and expert discovery closed on November 2, 2025.[66] Yet Mr. Salas never disclosed any expert opinions during that period. After being made aware of this failure, Mr. Salas submitted an expert disclosure that still failed to comply with the requirements of Rule 26(a)(2)(C).[67] And though Mr. Salas's untimely and insufficient disclosures were not the product of bad faith, Plaintiff's counsel has offered no justifiable excuse for them.[68] Allowing Plaintiff's treating

---

[64] *See Jacobsen v. Deseret Book Co*., 287 F.3d 936, 954 (10th Cir. 2002) ("Since we are remanding this case for further proceedings, trial is no longer imminent, and the district court could allow more time for discovery without disrupting a scheduled trial.").

[65] Gatewood Affidavit ¶¶ 8–11.

[66] Second Amended Scheduling Order 2–3.

[67] *See* Plaintiff's Expert Disclosures.

[68] *See generally* Gatewood Affidavit.

physicians to testify at trial as experts would prejudice Defendant by introducing testimony that she had no opportunity to prepare for or rebut. Curing this prejudice would require the court and the parties to repeat an entire phase of litigation solely for Plaintiff's benefit and because of his failure to comply with Rule 26.

Because they were properly included in Plaintiff's initial disclosures, the treating physicians may testify as lay witnesses, but they may not testify as experts.[69] Lay witnesses can only testify to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[70] Thus, the treating physicians may testify as to their treatment of Mr. Salas's injuries, but they may not testify about causation because such testimony would go beyond their treatment of the patient and would be based on their specialized training and knowledge.[71]

## II.     Causation

Having determined that Mr. Salas cannot present expert testimony at trial, the court must now decide whether he can prove his case without such testimony. The Complaint states only one cause of action against Ms. St. Pierre, negligence.[72] In Utah, the essential elements of a negligence claim are, "(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a

---

[69] *See Blodgett v. United States*, No. 2:06-CV-00565-DAK, 2008 WL 1944011, at *5 (D. Utah May 1, 2008) ("[A] treating physician who does not provide testimony under Federal Rules of Evidence 702, 703, and 705 can nonetheless testify as a lay witness.").

[70] Fed. R.  Evid. 701.

[71] *See Blodgett*, 2008 WL 1944011, at *5; *see also Montoya v. Sheldon,* 286 F.R.D. 602, 613 (D.N.M. 2012) ("A treating physician testifying as a lay witness cannot testify to any opinions regarding causation . . . because opinions regarding causation of a medical condition require knowledge derived from previous professional experience."); *Lundgren v. Matrixx Initiatives, Inc*., No. 1:10-CV-128, 2013 WL 3087726, at *2 (D. Utah June 18, 2013) (Explaining that a treating physician's causation opinion is "surely based on that physician's specialized knowledge and training, and is therefore impermissible testimony from a lay witness.").

[72] Compl. ¶¶ 15–22.

breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff."[73] Here, Ms. St. Pierre argues that Mr. Salas cannot prove causation without expert opinion.[74]

Plaintiff carries the burden of "establishing a prima facie case of negligence, including proximate and actual causation of the injury."[75] "The causal connection between the alleged negligent act and the injury is never presumed and . . . is a matter the plaintiff is always required to prove affirmatively."[76] Although the question of causation is usually left to a jury, a court may decide the issue as a matter of law if "there is no evidence to establish a causal connection, thus leaving causation to jury speculation."[77]

In Utah, an injury that "involves obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding" requires expert testimony to establish a causal link.[78] However, Utah also recognizes a "common knowledge exception" recognizing that expert testimony is not always necessary "to prove that a particular injury caused certain damages when the link between injury and treatment 'would be *clear* to a lay juror who has no medical training—i.e., when the causal connection is *readily apparent* using only 'common knowledge.'"[79]

For example, Utah courts have found that expert testimony was necessary when a

---

[73] *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 55, 417 P.3d 95, 110.

[74] MSJ 10.

[75] *Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 21, 176 P.3d 446, 451 (quoting *Clark v. Farmers Ins. Exch.,* 893 P.2d 598, 601 (Utah Ct. App. 1995)) (cleaned up).

[76] *Id*. (quoting *Jackson v. Colston*, 116 Utah 295, 209 P.2d 566, 568 (1949)) (cleaned up).

[77] *Id.*

[78] *Id.* at 452 (quoting *Beard v. K–Mart Corp.,* 2000 UT App 285, ¶ 16, 12 P.3d 1015).

[79] *Sheppard v. Geneva Rock*, 2021 UT 31, ¶ 31, 493 P.3d 632, 638-39 (emphasis supplied) (quoting *Bowman v. Kalm*, 2008 UT 9 ¶ 9, 179 P.3d 754).

plaintiff's injury could have been caused by either the defendant's negligence or a pre-existing medical condition.[80] Expert testimony was also needed to causally connect a plaintiff's neck and wrist pain to being struck on the head by the defendant because the connection between a head injury and wrist surgery is not obvious to a jury.[81] On the other hand, the Utah Supreme Court explained that the common knowledge exception applied when a plaintiff who only occasionally experienced back pain, but who was never seen for back pain and did not complain of it, was involved in a violent car accident and immediately felt severe back pain.[82]

In this case, Ms. St. Pierre argues that Plaintiff's alleged back, neck, and shoulder injuries are "complex and obscure medical factors beyond a lay person's knowledge" and thus require expert testimony to prove.[83] This conclusion is largely based on arguments that the accident in question was minor relative to the severity of the injuries and that Mr. Salas's medical history shows alternative explanations for his alleged injuries.[84]

### A.    Seriousness and Delay

As to the first point, there is evidence that the car accident at issue was not particularly violent or severe.[85] However, it is within the common knowledge of an ordinary person that even a relatively minor car accident can cause injuries, potentially including neck and back injuries like those alleged by Mr. Salas. To the extent a person did not have any preexisting neck, back,

---

[80] *See Fox*, 176 P.3d at 452 (Plaintiff's fall down the stairs and ensuing injuries could have been caused by allegedly defective stairs or by her knee giving out from osteoarthritis); *see also Brinkerhoff v. Fleming,* 2023 UT App 92, ¶ 18, 536 P.3d 156, 159–60 (Plaintiff's injuries could have arisen from the car accident in question or from two previous car crashes).

[81] *Beard v. K-Mart Corp.,* 2000 UT App 285, ¶ 16, 12 P.3d 1015, 1019.

[82] *Sheppard*, 493 P.3d at 639.

[83] MSJ 15.

[84] *Id.*

[85] *See* Vehicle Damage Photo, ECF No. 35-9, filed Dec. 15, 2025 (Showing only minor damage to Plaintiff's vehicle following the accident); *see also* Salas Depo ¶¶ 14:21–15:2 (Mr. Salas only realized his vehicle had been hit after pulling over to see what had happened).

shoulder, and chest pain, the link between a car accident and new pain in those areas could be "clear to a lay juror who has no medical training" depending on the fact pattern, so no expert testimony necessarily would be required to show causation.[86]

Defendant also argues that the cause of Mr. Salas's injuries is not obvious in part because he "felt no immediate pain at the scene" and waited thirteen days to seek treatment.[87] While a delay in seeking treatment after an accident can weigh against the common knowledge exception,[88] the facts in this case are distinct. In *Brinkerhoff v. Fleming*, the case cited by Defendant, the plaintiff waited four months after her accident before seeking treatment.[89] In contrast, Mr. Salas testified that he felt pain from the accident as soon as he got home and his adrenaline wore off.[90] And he sought treatment for his pain within two weeks after the accident occurred.[91] Unlike the four-month delay in *Brinkerhoff*, Plaintiff's delay of two weeks here does not seriously risk interrupting an obvious causal link, especially when his pain began so soon after the accident.

### B.    Other Accidents and Medical Conditions

Regarding Defendant's second point, Utah courts have held that expert testimony is required when a plaintiff has admitted to prior accidents or medical conditions that could also reasonably have caused the alleged harm.[92] In such cases, a jury "would have to use speculation to choose between the two theories" in the absence of expert testimony.[93] Here, Defendant states

---

[86] *Sheppard*, 493 P.3d at 639.
[87] Plaintiff's Supplemental Brief 8.
[88] *Brinkerhoff v. Fleming*, 2023 UT App 92, ¶ 18, 536 P.3d 156, 160.
[89] *Id.* at 157.
[90] Salas Deposition 24:11–17.
[91] Salas Medical Records 24.
[92] *See Fox*, 176 P.3d at 452.
[93] *Id.* at 449.

in her list of undisputed material facts that "Plaintiff has acknowledged a pre-Accident medical history involving, among other things, prior low back pain, a work injury to his right shoulder, a neck injury, and an injury to his chest at work."[94] She asks the court to "consider [this] fact undisputed for purposes of the motion" because Mr. Salas did not respond to it[95] and argues that Plaintiff's pre-existing conditions "are alternate and possible explanations" for his alleged injuries.[96] The court will not accept Defendant's statement as true because it partly mischaracterizes the facts on the record. Plaintiff's discovery responses, which Ms. St. Pierre cites to as support for her statement, clearly indicate that Mr. Salas's work injuries both occurred years after the car accident in question.[97] Instead, the court will look to the evidence on record to determine whether a jury could find causation here in the absence of expert testimony or whether other confounding factors would force the jury to resort to speculation.

### 1.    Pre-Accident Back Pain

Defendant argues that Plaintiff's "clinical history of prior lower back pain" presents an alternate explanation for his back pain following the crash and that expert testimony is necessary for a jury to determine the source of any back pain.[98] Mr. Salas's discovery responses state that he was treated for "nausea and vomiting, a physical wellness examination, nose bleeds, melena and related pain near the pelvis/low back area, hives, urticaria, and headaches" in 2019.[99] In his deposition, Mr. Salas indicated that his 2019 back pain was caused by inflammatory bowel

---

[94] MSJ 4.
[95] Reply in Support of Motion for Summary Judgment ("Reply") 2, ECF No. 35, filed Dec. 15, 2025.
[96] MSJ 15.
[97] Plaintiff's Discovery Response 5, 6.
[98] MSJ 15.
[99] Plaintiff's Discovery Response 5.

disorder and that it went away following treatment of that condition.[100] Ms. St. Pierre contends that the 2019 back pain was related to "postural conditioning" or potentially "degenerative disc disease," conditions that may not have been resolved at the time of the crash and that could present an alternative source of any resulting back pain.[101]

Mr. Salas's 2019 medical records show that he visited the PGUT Western Hills Medical Clinic on June 11, 2019, approximately nine months prior to his car accident.[102] The clinic notes indicate that his chief complaint related to bowel pain and that he had also been complaining of lower back pain for several weeks.[103] In the "Assessment/Plan" section of the clinic notes, it states that Mr. Salas's low back pain "may be related to postural conditioning, patient may also have some degenerative disc disease as well."[104] Plaintiff responds that the 2019 back pain "resolved entirely on its own without any medical intervention" prior to the car accident.[105]According to Mr. Salas, because he did not complain of back pain in his next doctor visit in September 2019,[106] it must have been resolved and could not be an alternative cause of the pain he experienced following the crash.[107]

In the absence of any prior back pain, the causal connection between a car accident and lower back pain would be "readily apparent using only common knowledge."[108] However, under the facts of this case, the court finds that expert testimony is necessary to show that Mr. Salas's

---

[100] Salas Deposition 48:5–22.
[101] Defendant's Supplemental Brief 3, ECF No. 38, filed Mar. 10, 2026.
[102] Salas Medical Records 81.
[103] *Id.*
[104] *Id.* at 82.
[105] Plaintiff's Supplemental Brief 3.
[106] Mr. Salas's medical records show that his chief complaint during this visit was skin irritation and hives. *See* Salas Medical Records 84.
[107] Plaintiff's Supplemental Brief 3.
[108] *Sheppard v. Geneva Rock*, 2021 UT 31, ¶ 31, 493 P.3d 632, 639 (quoting *Bowman v. Kalm*, 2008 UT 9, ¶ 9, 179 P.3d 754).

16

back pain was caused by the accident. Mr. Salas went to the doctor less than a year prior to his accident complaining about lower back pain that had continued for several weeks.[109] The doctor identified the back pain as being potentially related to "postural conditioning" or "degenerative disc disease."[110] The fact that Mr. Salas did not raise any back issues at a subsequent appointment does not show that his back pain and its potential underlying sources were totally resolved. A jury faced with this evidence would have no way of determining to what extent Mr. Salas's later back pain was attributable to the car accident versus other potential sources, like posture issues or degenerative disc disease.[111] The court cannot find that it would be "clear to a lay juror" that the causal connection "is readily apparent" using only common knowledge.[112] On this record, without expert testimony, the jury would be required to resort to speculation.

### 2.    Post-Accident Workplace Injuries

Mr. Salas testified that the first of his two workplace injuries occurred when a heavy box being lifted by a crane fell and grazed his head and shoulder.[113] His medical records related to this incident indicate that he was initially diagnosed with some shoulder and low back pain.[114] Those same records show that several weeks later he had no lower back pain but was experiencing "persistent neck pain" that worsened with neck movement.[115] The second

---

[109] Salas Medical Records 81.

[110] *Id.* at 82.

[111] *See Brinkerhoff v. Fleming*, 2023 UT App 92, ¶ 18, 536 P.3d 156, 160.

[112] *Sheppard v. Geneva Rock*, 2021 UT 31, ¶ 31, 493 P.3d 632, 638–39.

[113] Salas Deposition 34:19–35:23.

[114] Salas Medical Records 90.

[115] *Id.* at 91.

17

workplace injury occurred when Mr. Salas was hit in his chest by a rubber hammer that rebounded after striking something else.[116] Only his ribs were hurt in that incident.[117]

Because these injuries occurred years after the car accident,[118] there is no risk that they would force a jury to resort to speculation as to the cause of Mr. Salas's initial neck, back, and shoulder injuries. However, it would not be clear whether any alleged injury, treatment, or pain to Plaintiff's neck and shoulders that occurred after these workplace accidents was caused by the original car accident. Attributing any shoulder or neck pain to either the car crash or the workplace injury would require a layperson to resort to speculation. Therefore, a jury would need expert testimony to determine whether any shoulder or neck pain occurring after the first workplace accident was caused by the car accident or by Mr. Salas being struck by a heavy falling object.[119]

## III.    Damages

Finally, Defendant argues that Mr. Salas cannot show that his medical expenses were reasonable and necessary without the use of expert testimony.[120] In Utah, once injuries have been shown, additional evidence is required "to show that the medical expenses accurately reflect the necessary treatment that resulted from the injuries and that the charges are reasonable."[121] In other words, it is not enough for a plaintiff to merely produce a medical bill to show medical expense damages.[122] Instead, the plaintiff must also introduce evidence that the treatment was

---

[116] Salas Deposition 35:24–36:11.

[117] *Id.*

[118] Plaintiff's Discovery Response 5, 6.

[119] *See Brinkerhoff v. Fleming*, 2023 UT App 92, ¶ 18, 536 P.3d 156, 160.

[120] MSJ 15.

[121] *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110, 1118.

[122] *Smith v. Creech*, 2025 UT App 195, ¶ 21 ("A court has no way to assess whether a medical bill, standing alone, constitutes evidence of a reasonable charge."); *see also Chevron Pipe Line Co. v. Pacificorp*, No. 2:12-CV-287-TC,

necessary[123] and that the cost of that treatment was reasonable.[124] Necessity and reasonableness can be shown by evidence like expert testimony or by the fact that an insurance company paid the bills without objection.[125]

In this case, Mr. Salas seeks damages for medical expenses.[126] Though his specific medical bills are not in the record, Mr. Salas has testified that he received electro-shock treatment, chiropractic treatment, lower back injections, x-rays, and an MRI for his alleged injuries.[127] Defendant argues that, without expert testimony, Mr. Salas cannot establish that these treatments were medically necessary and that their costs were reasonable.[128] Plaintiff does not respond to this argument or attempt to show how he can establish that his medical expenses were necessary and reasonable without expert testimony.[129]

Treating physicians may testify to the necessity and reasonableness of their care if they are properly disclosed and designated as expert witnesses.[130] However, as discussed above, treating physicians who testify as lay witnesses are limited to discussing "observations based on personal knowledge, including the treatment of the party."[131] Rule 701 of the Federal Rules of Evidence "allows lay witnesses to offer 'observations that are common enough and require a

---

2017 WL 3382065, at *10 (D. Utah Aug. 4, 2017) ("Utah courts [] require proof through an expert witness that the medical expenses were reasonable and necessary.").

[123] *See Sheppard v. Geneva Rock,* 2021 UT 31, ¶ 44, 493 P.3d 632, 641 ("[A] jury may need expert testimony to know that trigger point injections would be necessary to treat [plaintiff's] injury.").

[124] *Stevenett v. Wal-Mart Stores, Inc.*, 1999 UT App 80, ¶ 31, 977 P.2d 508, 515 ("[W]e follow those jurisdictions that require . . . the claimant to show both the necessity of the expense and the reasonableness of the fee charged.").

[125] *Id.* at 515.

[126] Compl. 5.

[127] Salas Deposition 27:1–13, 28:19–29:3, 29:25–30:2, 31:2–9.

[128] MSJ 15–16.

[129] *See generally* Opp'n.

[130] *See Rawers v. United States,* No. CIV 19-0034 JB\CG, 2020 WL 5658093, at *18 (D.N.M. Sept. 23, 2020).

[131] *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999).

limited amount of expertise, if any.'"[132] It does not permit lay opinions "based on scientific, technical, or other specialized knowledge."[133] This prohibition on lay opinions based on specialized knowledge was added to Rule 701 over twenty years ago to avoid the risk of parties "proffering an expert in lay witness clothing" and thereby "evad[ing] the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26."[134]

Mr. Salas's treating physicians may not testify about the necessity or reasonableness of their care in their capacity as lay witnesses. Such testimony requires specialized training and experience beyond mere observation of the treatment itself.[135] In this case, the necessity of many of Mr. Salas's medical expenses, like back injections, electrical shocks, and chiropractic treatment, cannot be easily determined merely by observing the treatment itself. Similarly, accurate and reasonable costs for such treatments cannot be determined by the average person without some degree of specialized knowledge or experience.[136]

Without expert testimony or any other evidence, Plaintiff cannot show that his medical expenses were necessary and reasonable as a matter of law. As discussed above, he also cannot show a causal link between the car accident and his lower back pain or any neck and shoulder pain occurring after his first workplace accident. However, Mr. Salas's negligence claim

---

[132] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir. 1995)) (cleaned up).

[133] Fed. R. Evid. 701(c).

[134] Fed. R. Evid. 701, *Advisory Committee Notes, 2000 Amendments*.

[135] *See Rockwell v. State Farm Mut. Auto. Ins. Co*., No. 18-CV-0722-KG/SMV, 2022 WL 343665, at *2 (D.N.M. Feb. 4, 2022) (Opinions about what treatments are medically necessary and reasonable are "the purview of expert testimony.").

[136] *See Masa v. State Farm Mut. Auto. Ins. Co.,* No. 20-CV-1279-WJM-NRN, 2021 WL 6052622, at *6 (D. Colo. Dec. 21, 2021) ("The Court concludes that testimony by the Treating Physicians as to the reasonableness and necessity of their medical bills goes beyond their personal observations or treatment of Plaintiffs.").

survives to the extent he also seeks other types of damages,[137] like those related to pain and suffering from neck and shoulder injuries prior to the work accident.

## ORDER

Defendant's [27] Motion for Summary Judgment is GRANTED IN PART.

Signed April 2, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[137] Compl. 5–6.